T.C. Summary Opinion 2007-172

UNITED STATES TAX COURT

BOBBY LORN AND LIBBY C. CLABORN, Petitioners <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 16693-05S.                    Filed October 3, 2007.

Bobby Lorn and Libby C. Claborn, pro sese.

<u>John R. Bampfield</u>, for respondent.


WHERRY, <u>Judge</u>:  This case was heard pursuant to section 7463
of the Internal Revenue Code in effect when the petition was
filed.[1]  Pursuant to section 7463(b), the decision to be entered

_____

    [1] All subsequent section references are to the Internal
Revenue Code of 1986, as amended and in effect for the taxable
year at issue.  All Rule references are to the Tax Court Rules of
Practice and Procedure.

is not reviewable by any other court, and this opinion shall not be treated as precedent for any other case.

Respondent determined a deficiency in petitioner's Federal income tax for the 2003 taxable year in the amount of $3,592. The issues now before the Court are: (1) Whether petitioners are entitled to an itemized deduction of $2,096 for charitable contributions of cash to First Presbyterian Church in Chattanooga, Tennessee (church);[2] (2) whether petitioners are entitled to an itemized deduction in excess of the $25 respondent allowed for their charitable contribution of property to the Salvation Army; and (3) whether petitioners are entitled to a miscellaneous itemized deduction of $21,729 for unreimbursed employee expenses.

---

[2] Respondent concedes that petitioners are allowed a $500 deduction for 20 separate $25 contributions made to their church in 2003 by check through the use of tithing envelopes. On their 2003 Federal income tax return, petitioners claimed only a $2,000 deduction for contributions to their church in cash rather than by check. At trial, petitioners claimed such cash contributions in the amount of $2,096, as set forth on a self-prepared itemized schedule they prepared for trial. That schedule showed cash contributions by week to "Lee Anderson's Class"; "Children's Class"; and "Church Offering". The totals for 2003 were $84, $85 (but petitioners claimed $87 as the result of an addition error), and $1,925, respectively. The weekly donations to each of the two "classes" were $2 with one exception, a $1 donation to the "Children's Class" for the week of June 22. Respondent also concedes that petitioners are entitled to a $250 deduction for contributions made to the Lookout Mountain Education Fund in 2003. That deduction was not allowed in the statutory notice of deficiency that was issued by respondent in this case.

## Background

Some of the facts have been stipulated, and the stipulated facts and accompanying exhibits are hereby incorporated by reference into our findings. Petitioners, husband and wife, resided in Chattanooga, Tennessee, when they filed their petition in this case.

Petitioner Bobby Lorn Claborn (Mr. Claborn) is a mechanical engineer. Mr. Claborn worked for ResourceTek LLC from January 1 to February 16, 2003, was unemployed for the following 8 months, and then worked for RWE NUKEM Corporation from October 20, 2003, through the end of that year.

While employed by RWE NUKEM Corporation, Mr. Claborn drove to work each work day. The distance from his house in Chattanooga, Tennessee, to the offices of RWE NUKEM Corporation in Oak Ridge, Tennessee, is approximately 224 miles round trip.

Petitioners electronically filed a timely joint Form 1040, U.S. Individual Income Tax Return, for the 2003 taxable year. Petitioners chose to itemize their deductions and attached a Schedule A, Itemized Deductions. The Schedule A reflected total itemized deductions of $34,100, which included a charitable contribution deduction of $2,775 and an "other miscellaneous" deduction of $21,729.[3]

---

[3] This represents the amount by which petitioners' miscellaneous deductions exceeded 2 percent of their adjusted

(continued...)

On July 8, 2005, respondent issued the aforementioned notice of deficiency. Petitioners then filed a timely petition with this Court. A trial was held on March 5, 2007, in Knoxville, Tennessee.

## Discussion

### I. Burden of Proof

As a general rule, the Commissioner's determination of a taxpayer's liability is presumed correct, and the taxpayer bears the burden of proving that the determination is improper. See Rule 142(a); Welch v. Helvering, 290 U.S. 111, 115 (1933). However, pursuant to section 7491(a), the burden of proof on factual issues that affect the taxpayer's tax liability may be shifted to the Commissioner where the "taxpayer introduces credible evidence with respect to * * * such issue". In the instant case, petitioners have neither asserted nor demonstrated that they satisfied the requirements of section 7491(a), including the requirement to maintain required records, to shift the burden of proof onto respondent with respect to any factual issue. Consequently, the burden of proof remains on petitioners.

### II. General Deduction Rules

Deductions are a matter of legislative grace, and the taxpayer must maintain adequate records to substantiate the

---

[3](...continued)
gross income. See sec. 67(a). The amount of petitioners' total reported miscellaneous deductions was $23,269.

amounts of any deductions or credits claimed.  Sec. 6001; INDOPCO Inc. v. Commissioner, 503 U.S. 79, 84 (1992); sec. 1.6001-1(a), Income Tax Regs.

Generally, the Court may allow for the deduction of a claimed expense (other than those subjected to the strict substantiation requirements of section 274) even where the taxpayer is unable to fully substantiate it, provided the Court possesses an evidentiary basis for doing so.  Cohan v. Commissioner, 39 F.2d 540, 543-544 (2d Cir. 1930); Vanicek v. Commissioner, 85 T.C. 731, 742-743 (1985); sec. 1.274-5T(a), Temporary Income Tax Regs., 50 Fed. Reg. 46014 (Nov. 6, 1985). In these instances, the Court is permitted to approximate the allowable expense, bearing heavily against the taxpayer whose inexactitude is of his or her own making.  Cohan v. Commissioner, supra at 544.

III.  Charitable Contributions

Section 170(a) allows for the deduction of charitable contributions made to or for the use of an organization described in section 170(c) and verified as required by the statute and corresponding regulations.  Section 170(f)(8) generally requires a taxpayer claiming a charitable contribution deduction greater than $250 to substantiate the deduction by obtaining a contemporaneous written acknowledgment of the contribution from the charitable organization.  Under section 170(f)(8)(B)(i), that

written acknowledgment must include "The amount of cash and a description (but not value) of any property other than cash contributed."  In addition, the written acknowledgment must state, among other things, "Whether the donee organization provided any goods or services in consideration, in whole or in part" for the contribution.  Sec. 170(f)(8)(B)(ii).  Finally, a taxpayer deducting a charitable contribution, regardless of its amount, is generally required to maintain for each contribution a canceled check, a receipt from the donee charitable organization showing the name of the organization and the date and amount of the contribution, or other reliable written records showing the name of the donee and the date and amount of the contribution.  Sec. 1.170A-13(a)(1), Income Tax Regs.

In support of the claimed $2,096 in cash donations to their church, petitioners have offered the aforementioned self-prepared list of the contributions and the dates on which they were made, along with letters from elders of their church stating that petitioners attend church regularly and participate in church programs.[4]

Notwithstanding the Court's discretionary authority pursuant to Cohan, a taxpayer must provide the Court with some basis upon

---

[4]  Mr. Claborn claims to have made these donations in 44 separate "Church Offering" installments ranging from $25 to $60, 42 separate $2 donations for "Lee Anderson's Class," and 42 separate $2 donations and a single $1 donation for "Children's Class."

which an estimate of the amount of a claimed deduction may be made. <u>Vanicek v. Commissioner</u>, <u>supra</u>. Without such a basis, any allowance would amount to "unguided largesse." <u>Williams v. United States</u>, 245 F.2d 559, 560 (5th Cir. 1957). The aforementioned documents provided by petitioners in support of Mr. Claborn's cash donations, which we believe were not prepared contemporaneously with those donations, are not reliable enough to support all of the claimed cash donations. Specifically, we do not find the documents reliable enough to support the claimed $1,925 in "Church Offering" cash donations, especially in light of the materiality of the amount claimed and the 20 separate $25 contributions that petitioners made to their church in 2003 by check through the use of tithing envelopes. In order to satisfy the regulatory substantiation requirements, checks, receipts, or other reliable contemporaneous records were required. See sec. 1.170A-13(a)(1), Income Tax Regs. As a result, we do not exercise our discretionary authority pursuant to <u>Cohan</u> with respect to those cash donations. However, because petitioners were regular churchgoers with two children, we do find the evidence reliable enough to support the claimed 42 separate $2 donations for "Lee Anderson's Class," and the 42 separate $2 donations and the single $1 donation for "Children's Class." We therefore conclude that petitioners are entitled to deduct $169 of cash charitable contributions.

Turning to the value of petitioners' donation to the Salvation Army, we note that petitioners have provided a receipt from the Salvation Army, dated November 21, 2003, reflecting the donation of three boxes containing clothing and toys. However, by failing to state whether the Salvation Army provided any goods or services in exchange for a contribution that petitioners claim exceeded $250, the receipt fails to satisfy section 170(f)(8)(B)(ii). Although we believe that it is unlikely that petitioners received any goods or services from the Salvation Army in exchange for their donation, we are required to apply the statute and cannot escape its clear command. Weyts v. Commissioner, T.C. Memo. 2003-68 ("To allow petitioner the charitable contribution deduction in the circumstances here would contravene the specific statutory language and purpose of recordkeeping for contributions in excess of $250."); see also Kendrix v. Commissioner, T.C. Memo. 2006-9. Accordingly, petitioners have not demonstrated entitlement to a deduction in excess of the $25 that respondent has allowed for their charitable contribution of property to the Salvation Army.

IV. Unreimbursed Employee Business Expenses

Section 162(a) authorizes a deduction for "all the ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business". However, taxpayers are generally barred from deducting the daily cost of commuting to

and from work, as a commuting expense is considered to be personal and nondeductible. Commissioner v. Flowers, 326 U.S. 465, 473-474 (1946); sec. 1.162-2(e), Income Tax Regs. An exception to the nondeductibility of commuting expenses involves situations where the transportation is to and from a temporary work location. See Rev. Rul. 90-23, 1990-1 C.B. 28, as amplified and clarified by Rev. Rul. 94-47, 1994-2 C.B. 18, as modified and superseded by Rev. Rul. 99-7, 1999-1 C.B. 361.

Also, certain business expenses described in section 274(d) are subject to strict substantiation rules that supersede the Cohan doctrine. Sanford v. Commissioner, 50 T.C. 823, 827-828 (1968), affd. per curiam 412 F.2d 201 (2d Cir. 1969); sec. 1.274-5T(a), Temporary Income Tax Regs., 50 Fed. Reg. 46014 (Nov. 6, 1985). Section 274(d) applies to: (1) Any traveling expense, including meals and lodging away from home; (2) entertainment, amusement, and recreational expenses; or (3) the use of "listed property", as defined in section 280F(d), including passenger automobiles. To deduct such expenses, the taxpayer must substantiate by adequate records or sufficient evidence to corroborate the taxpayer's own testimony: (1) The amount of the expenditure or use, which includes mileage in the case of automobiles; (2) the time and place of the travel, entertainment, or use; (3) its business purpose; and in the case of

entertainment, (4) the business relationship to the taxpayer of each expenditure or use. Sec. 274(d)(4).

A. Expenses Relating to Mr. Claborn's Employment With ResourceTek LLC

Mr. Claborn has submitted hotel receipts and a mileage log in support of claimed deductions relating to his temporary employment with ResourceTek LLC.[5] However, even setting aside the substantiation requirements, the evidence of record reflects that Mr. Claborn was reimbursed for the expenses that he incurred during his brief employment with ResourceTek LLC for which he claims a deduction. In that regard, in response to a request from ResourceTek LLC for a canceled check reflecting that he had received a per diem allowance, Mr. Claborn was provided a document reflecting that he was paid an untaxed per diem allowance that amounted to $400 weekly.[6] Although it is unclear exactly how much of a deduction petitioners think they are entitled to for expenses relating to Mr. Claborn's temporary employment with ResourceTek LLC, petitioners have failed to demonstrate expenses exceeding Mr. Claborn's $400 weekly per diem allowance. Accordingly, petitioners are denied a deduction for

---

[5] Respondent does not contest the temporary nature of Mr. Claborn's employment with either ResourceTek LLC or RWE NUKEM Corporation.

[6] In addition, Mr. Claborn's employment agreement with ResourceTek LLC provided for the possibility of a per diem allowance.

expenses incurred in connection with Mr. Claborn's employment with ResourceTek LLC.[7]

B. Expenses Relating to Mr. Claborn's Employment with RWE NUKEM Corporation

Petitioners claim a deduction for automobile expenses incurred by Mr. Claborn while he was temporarily employed by RWE Nukem Corporation from October 20, 2003, to the end of that year. As mentioned above, passenger automobiles are listed property under section 280F subject to the strict substantiation requirements of section 274(d).

At trial, Mr. Claborn presented a pocket calendar in which he made notations of the mileage that he drove to and from work

---

[7] On Mar. 8, 2007, petitioners filed a motion to reopen the record and submitted a Form W-2, Wage and Tax Statement, which they assert reflects that Mr. Claborn was not paid a per diem allowance while employed by ResourceTek LLC. Although, in the spirit of sec. 7463(a) and Rule 174(b), we will grant that motion, as explained below, that document does not support petitioners' argument. The Form W-2 submitted together with the motion to reopen reflects that Mr. Claborn received $16,922.50 in wages, tips, and other compensation for his work at ResourceTek, LLC, in 2003. The document, a payroll ledger prepared by Tailored Business, which acted as the payroll and bookkeeping agent for ResourceTek, LLC, indicates that, while working at ResourceTek, LLC, Mr. Claborn was paid an untaxed per diem allowance that amounted to $400 weekly. The payroll ledger also reflects that Mr. Claborn was paid a total of $19,942.50 for his work at ResourceTek, LLC, in 2003. Thus, it appears that Mr. Claborn received $3,020 in the form of an untaxed per diem allowance. Because Mr. Claborn worked at ResourceTek, LLC, for 7 weeks in 2003 and was paid a $400 weekly allowance, it is unclear why he was paid $3,020 in untaxed per diem benefits rather than $2,800. In any event, this discrepancy is to Mr. Claborn's benefit, as none of the untaxed per diem allowance was reported on the Form W-2 or taxed by respondent.

each day while he was temporarily employed by RWE Nukem Corporation. Because Mr. Claborn presented this evidence for the first time at trial, we do not believe that he maintained contemporaneous records of his automobile expenses. And, although a contemporaneous log is not required in order to substantiate the deduction, corroborative evidence to support a taxpayer's reconstruction of the elements of the expenditure or use must have "a high degree of probative value to elevate such statement" to the level of credibility of a contemporaneous record. Sec. 1.274-5T(c)(1), Temporary Income Tax Regs., 50 Fed. Reg. 46014 (Nov. 6, 1985).

We do not doubt that Mr. Claborn, at some point, attempted to accurately record his daily mileage. Nevertheless, the pocket calendar that he provided at trial does not possess a sufficiently high degree of probative value to render it credible as a contemporaneous record. For example, Mr. Claborn's calendar simply contains the number of miles that Mr. Claborn drove each day, presumably to work. It does not establish the portion of his daily mileage attributable to personal transportation. Nor does it explain variances in the number of miles recorded. In the end, the calendar provided at trial by Mr. Claborn is simply not definite and reliable enough to support an automobile expense deduction for 2003.

C. <u>Job-Search Expenses</u>

Job-search expenses are deductible under section 162(a) to the extent they are incurred in searching for new employment in the employee's same trade or business.  See <u>Primuth v. Commissioner</u>, 54 T.C. 374, 378-379 (1970); see also <u>Murata v. Commissioner</u>, T.C. Memo. 1996-321.

Although respondent asserts that petitioners seek a $5,000 deduction for job-search expenses, petitioners provided no argument as to that matter at trial, and there is no evidence of record to support such a deduction.  Consequently, to the extent that petitioners claim such a deduction, they have not demonstrated entitlement to it.

The Court has considered all of petitioners' contentions, arguments, requests, and statements.  To the extent not discussed herein, we conclude that they are meritless, moot, or irrelevant.

To reflect the foregoing,

<u>Decision will be entered</u>

<u>under Rule 155</u>.